# EXHIBIT C

9/25/2020 4:09 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 46575122
By: Cecilia Thayer
Filed: 9/25/2020 4:09 PM

2020-60505 / Court: 281

CAUSE NO. 2020-_____

| | | |
|---|---|---|
| POLARIS ENGINEERING, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | HARRIS COUNTY, TEXAS |
| v. | § | |
| | § | _____th JUDICIAL DISTRICT |
| TEXAS INTERNATIONAL TERMINALS, LTD., | § § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF POLARIS ENGINEERING, INC.'S**
**ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE**

Plaintiff Polaris Engineering, Inc. ("Polaris") files this Original Petition and Requests for Disclosure against Texas International Terminals, Ltd. ("TXIT") and respectfully shows as follows:

**DISCOVERY**

1. This lawsuit should be conducted under a Level 2 discovery control plan. TEX. R. CIV. P. 190.3.

**PARTIES**

2. Polaris is a corporation incorporated under the laws of the State of Louisiana with its principal place of business in Lake Charles, Louisiana.

3. TXIT is a limited partnership incorporated under the laws of Texas with its principal place of business in Galveston, Texas. TXIT can be served through its registered agent for service in Texas, Todd P. Sullivan at 6702 Broadway, Galveston, TX 77554 pursuant to TEX. R. CIV. P. 21a.

**VENUE**

4. Venue is proper in Harris County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002 which states that all lawsuits shall be brought in the county in which all or a substantial

part of the events or omissions giving rise to the claim occurred. The Parties contractually agreed to the nonexclusive jurisdiction of the courts of Harris County, Texas and waived any defense of *forum non conveniens*.[1]

## RULE 47 CLAIM FOR RELIEF

5. Polaris seeks monetary relief over $1,000,000 and non-monetary relief in the form of a declaratory judgment. The damages sought are within the jurisdictional limits of the Court.

## STATEMENT OF FACTS

6. TXIT contracted with Polaris to design, engineer, and construct a 50,000 barrel a day crude oil processing facility in Galveston, Texas. The Parties entered into an Engineering, Procurement, and Construction Agreement dated March 16, 2019 (the "ISBL Agreement"), and a separate Engineering Procurement, and Construction Agreement for work Outside Battery Limits dated July 15, 2019 (the "OSBL Agreement"),[2] and commenced the "Work" set forth in Appendix A to the ISBL and OSBL Agreements.

7. To allow the project to commence without delay, as requested by TXIT, the parties agreed to certain Critical Assumptions and a change order process in the event any Critical Assumptions proved to be wrong. Appendix A articulates the Critical Assumptions that form the basis for the Contract Price and Schedule included in the ISBL Agreement. In the event any Critical Assumption proves to be incorrect, then the Contract Price and Schedule is adjusted through a Change Order process. During the course of construction, it became evident that some of the Critical Assumptions were incorrect and necessitated change orders to facilitate the continued construction of the facility. To date, TXIT has failed to pay for change orders related

---

[1] Due to the confidential nature of Exhibit 1, the same will be separately filed under seal.
[2] ISBL stands for "Inside Battery Limits," and OSBL stands for "Outside Battery Limits". The ISBL and OSBL contain substantially the same terms and conditions with respect to each project. Accordingly, only the ISBL is attached as Exhibit 1.

2

to incorrect Critical Assumptions which formed the basis of the parties' contractual agreement.

8.  The ISBL Agreement expressly provides that any disputes arising from or related to the Agreement shall be resolved as provided for in Article XIX.  "Dispute" "means any claim, dispute or controversy arising out of or relating to this Agreement."  Exhibit 1, ISBL Agreement at 9. Article XIX provides:

> "In the event of a Dispute between the Parties, within five (5) days of receipt of Notice of Dispute, or such time as is mutually agreed, the executive management of both Parties will meet and undertake to resolve the Dispute between themselves.  If the Dispute remains unresolved after twenty (20) days, and as a specific condition precedent to litigation, the Parties will participate, in good faith, in mediation in Houston, Texas, before one neutral mediator …. If the Parties are unable to resolve their Dispute through good faith mediation within 30 days after initiating such mediation, either Party may seek resolution through the court system as agreed in this Article."

Exhibit 1, ISBL Agreement at 56, § 19.1.

9.  Polaris presented TXIT with a Mechanical Completion Certificate dated May 21, 2020 which represented that the Work was "…mechanically completed in accordance with this Agreement and in accordance with Appendix A."  Appendix A of the ISBL Agreement describes the Facility as a "Crude Processing Unit designed to process 50,000 BPD of crude oil meeting the properties set forth in Appendix F and produce products meeting the properties set forth in Appendix G."  Appendix F includes Table 1, Design Composite Crude Feed Properties, the specifications required for any crude oil to be processed, and Table 2 the Performance Guarantee, the expected yield of various crude products after processing.

10.  TXIT countersigned the Notice of Mechanical Completion on or about June 2, 2020 pursuant to § 10.1(c).  Upon TXIT's approval of the Notice of Mechanical Completion, Polaris turned over the Facility[3] to TXIT for commissioning and start-up.  TXIT began the start-up process

---

[3] "Facility" is defined as "the facility to be designed, engineered, procured, installed, constructed, and tested by Contractor on the Facility Site pursuant to the terms of this Agreement, consisting of all the components, systems, sub-systems, equipment, materials and items of Work to be incorporated, all as described in Appendix A."  Exhibit

3

and introduced crude oil into the facility. Because TXIT failed to use crude oil that conformed with the specifications in Appendix F, the Facility was unable to process 50,000 barrels a day.

11. The failure of the Facility to process 50,000 barrels a day was caused, in part, by the non-conforming crude oil used by TXIT during the start-up process. Appendix F allowed a maximum of 18.8% naphtha in the crude oil; TXIT used crude oil that contained 30% naphtha. The facility, simply put, is not designed to process that amount of naphtha. Running an excess of naphtha through the Facility is like pouring an excess of liquid into a funnel—only so much liquid can run through a funnel during any given period of time. Because the non-conforming crude oil contained an excess of naphtha, the Facility was only able to process approximately 35,000 barrels a day. With conforming crude oil, the Facility is designed to process 50,000 barrels a day.

12. Following Mechanical Completion, corrective work could be accomplished during the Warranty Period pursuant to § 13.3 of the ISBL Agreement:

> If Owner provides notice to Contractor with the Warranty Period regarding an alleged Defect and any Work or component thereof is found to be Defective, Contractor shall, at its sole cost and expense, promptly correct (whether by repair, replacement or otherwise) such Defective Work, including all obligations in connection with such correction, such as in and out costs, storage, labor, Taxes, transportation and expediting costs and any other costs necessary to Complete the necessary Corrective Work… .

Exhibit 1, ISBL Agreement at 44, § 13.3(a). If it is "determined that there exists no defect covered by such warranty, Owner shall reimburse Contractor the actual and documented reasonable costs and expenses of Contractor for any work performed, including all costs for conducting the investigation of the alleged defect plus 15%." *Id.* at § 13.8.

13. On or about July 8, 2020, TXIT sent Polaris a letter regarding alleged ongoing and potential delays in completion of the project and disputes related to various change orders.

---

A, ISBL Agreement at 10.

4

Pursuant to the terms of the Agreement, the management of both companies attempted to resolve the disputed change orders at a meeting on or about July 24, 2020. After the meeting, TXIT requested a written response and represented it would take the issues discussed during the meeting under advisement. Polaris provided a detailed response to each issue raised by TXIT in the July 8, 2020 letter and the subsequent meeting. Thereafter, TXIT engaged in no further discussion of the disputed matters.

14. On September 11, 2020, Polaris sent a letter requesting mediation on the issues discussed during the July 24, 2020 meeting and addressed in Polaris' written response to the July 8, 2020 letter. Polaris also requested a second meeting of the management executives pursuant to the dispute resolution provisions of the ISBL Agreement to resolve some additional issues articulated in the September 11 letter.

15. Rather than submit any remaining disputed change orders to mediation or agreeing to a second meeting of the executives on the additional issues as required by the unambiguous terms of the ISBL Agreement, TXIT issued a Notice of Default on September 3, 2020[4] to Polaris and its surety and thereby circumvented the agreed dispute resolution procedures in the ISBL and OSBL Agreements.

16. In the Notice of Default, TXIT claimed Breach of Warranty and Material Breach as the basis for the alleged default. TXIT also purported to revoke TXIT's acceptance of Polaris' Mechanical Completion Certificate. At no time did TXIT invoke the Warranty procedures unambiguously set forth in Section 13 of the ISBL Agreement.

17. Polaris responded to the purported Notice of Default by letter on September 16, 2020, disputing that the Notice was appropriate for Default, as opposed to a Warranty issue, and

---

[4] Hurricane Laura made landfall as a Category 4 Hurricane on August 27, 2020 and tore through Lake Charles destroying homes and businesses and had significant impact on Polaris' principal offices.

5

demanded another management level meeting to resolve the dispute as to whether the issue was one of Default, and reiterated TXIT's failure to use crude oil that conformed to the specifications articulated in Appendix F to the ISBL Agreement. In response, TXIT expressly rejected Polaris' request for an additional executive level meeting on the Default issue, and took the position that the proper process for "addressing the noted deficiencies is for Polaris to develop a corrective action plan and present it to TXIT."

18. Despite the unambiguous terms of the Parties' ISBL Agreement, TXIT stated "Polaris' attempted reliance upon the dispute resolution procedure of Article XIX is misplaced and TXIT rejects the request for an additional executive level meeting to discuss the default present in our September 3, 2020 correspondence." TXIT failed to engage in the dispute resolution process. TXIT has not responded to Polaris' request for mediation or additional executive meetings pursuant to the dispute resolution procedures on which the parties agreed.

19. TXIT's response or abject lack thereof renders any resolution through the parties' agreed dispute resolution process futile. Pending resolution of any remaining disputed Change Orders, TXIT is obliged to continue to pay Polaris in accordance with the terms of the ISBL Agreement. *See* Exhibit 1, ISBL Agreement at 27, § 3.1(b). TXIT has not continued to pay Polaris during the pending resolution of the disputed Change Orders. Accordingly, Polaris seeks declaratory relief and damages caused by TXIT's breach of contract.

20. Polaris expressly disputes the alleged bases for TXIT's Notice of Default. TXIT's Notice of Default is based on an alleged Breach of Warranty and Breach of Contract related to the failure of the Facility to process 50,000 barrels per day. Polaris at all times has maintained that TXIT's failure to use crude oil that meets the specifications in Appendix F is the reason that the Facility can only process approximately 35,000 barrels per day. TXIT also alleges a Breach of

6

Contract based on the timeliness of the project without accounting for schedule changes attributable to Force Majeure events, Change Orders, late payment of invoices and other delays provided for in the ISBL and OSBL Agreements. Tabulating the schedule changes attributable to delays expressly provided for the ISBL and OSBL Agreements renders the project timely.

21. Appendix P to the ISBL Agreement requires Polaris to obtain, at TXIT's expense, a builder's risk "all risk" insurance policy. Polaris acquired the policy, and TXIT reimbursed Polaris for the cost of the requisite policy. TXIT refused to reimburse Polaris for the builder's risk policy when Polaris renewed the policy. TXIT's purported reason for refusal was because the project was allegedly behind schedule. Todd Sullivan of TXIT sent an email to Polaris unilaterally declaring that this is a "closed issue." There is no contractual basis for TXIT to avoid its obligation to pay for the requisite builder's risk policy based on any alleged scheduling issue. Appendix P to the OSBL Agreement also requires Polaris to obtain, at TXIT's expense, a builder's risk "all risk" insurance policy. Despite the agreement, TXIT has steadfastly refused, without basis, to reimburse Polaris for the cost of the builder's risk policy under both the ISBL and OSBL Agreements.

22. The original scope of work under the OSBL Agreement required Polaris to build a pipe rack at ground level. TXIT subsequently informed Polaris that it wanted the pipe rack built high enough off the ground for trucks to travel under it. In response, Polaris submitted a change order. TXIT refuses to accept the change order and refuses to agree that Polaris should proceed with construction of the pipe rack as originally designed pursuant to the Agreement. Polaris seeks a declaration that it is only required to build the pipe rack as provided for in the original scope of work to avoid additional scheduling delays and increasing costs.

## CAUSES OF ACTION

## DECLARATORY JUDGMENT ACTION

23. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

24. Pursuant to Section 37.001, et seq, Polaris seeks a declaration of rights under the ISBL and the OSBL Agreements. TXIT claims that the agreed dispute resolution procedures do not apply to the dispute arising from and related to TXIT's issuance of a Notice of Default based on an alleged Breach of Warranty and Breach of Contract. Polaris claims that the agreed dispute resolution procedures do apply to any dispute arising from or relating to the ISBL and OSBL Agreements including TXIT's allegation that Polaris is in default. This is a live and ongoing controversy that impacts the ability of the parties to resolve their disputes and progress completion of the projects that arise from and relate to the ISBL and OSBL Agreements. Polaris therefore requests that the Court declare the dispute resolution provisions applicable to all disputes arising from and related to the ISBL and OSBL Agreements including TXIT's allegation of default.

25. Polaris seeks a further declaration of rights under the ISBL and OSBL Agreements that TXIT is required to assert a Warranty Claim under the ISBL and OSBL Agreements as to any alleged defect prior to alleging an Event of Default based on any "False Representation or Warranty" under Section 16.1(d) of Article XVI. Section 13 of the Agreements specifically sets forth the proper procedure for a party to assert a Breach of Warranty claim. TXIT attempts to circumvent the parties' specific agreement as to Warranty claims including the cost-shifting provision by skipping straight to an alleged Default based on an alleged "Breach of Warranty," and not a "False Representation or Warranty" as referenced in Section 16.1(d). Accordingly, Polaris seeks a declaration as to whether TXIT is required to assert a Warranty Claim prior to issuing an alleged Event of Default based on any "False Representation or Warranty."

8

26. Polaris also seeks a declaration that there is no basis in the ISBL Agreement that allows TXIT to unilaterally revoke its acceptance of Polaris' Certificate of Mechanical Completion.

27. Polaris seeks a declaration that TXIT is required to reimburse Polaris for the builder's risk insurance policy under both the ISBL and OSBL Agreement. Polaris continues to maintain the requisite policies under both Agreements at its own substantial expense despite TXIT's refusal to pay.

28. The original scope of work under the OSBL Agreement required Polaris to build a pipe rack at ground level. TXIT subsequently informed Polaris that it wanted the pipe rack built high enough off the ground for trucks to travel under it. In response, Polaris submitted a change order. TXIT refuses to accept the change order and refuses to agree that Polaris should proceed as originally planned and agreed in the Agreement. Polaris seeks a declaration that it is only required to build the pipe rack as provided for in the original scope of work. Without a declaration of its obligations related to the "pipe rack" in the absence of an accepted change order, Polaris suffers additional scheduling delays and with those delays, overhead and expenses as well as obligations to renew the requisite builder's risk insurance policy for which TXIT agreed to bear the expense, but has refused to reimburse Polaris.

29. Polaris further requests a declaration as to the scheduling changes provided for in the ISBL and OSBL Agreements attributable to Force Majeure events, Change Orders, and late payments of invoices by TXIT. TXIT claims that the scheduling delays constitute a Breach of Contract without acknowledging and accounting for the scheduling changes provided for in the ISBL and OSBL Agreements.

## BREACH OF CONTRACT

30. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

31. Polaris and TXIT are parties to the ISBL and OSBL Agreements that are all valid enforceable contracts. Polaris is a proper party to bring suit for breach of the contract. Polaris performed its obligations under the ISBL and OSBL Agreements.

32. TXIT breached the ISBL Agreement by not paying for Change Orders related to incorrect Critical Assumptions that formed the basis of the parties' Agreement.

33. TXIT breached the ISBL Agreement by failing to reimburse Polaris for the business risk insurance policies under both the ISBL and OSBL Agreements.

34. TXIT breached the ISBL Agreement by refusing to engage in the requisite dispute resolution procedures articulated in § 19.1 of the ISBL and OSBL Agreements.

35. TXIT breached the ISBL Agreement by circumventing the requirements of Article XIII related to any alleged defects, and instead, issuing a Notice of Default.

36. TXIT breached the ISBL Agreement by failing to use crude oil that conformed with the specifications set forth in Appendix F.

37. TXIT breached the ISBL Agreement by issuing a Notice of Default based on scheduling delays without accounting for scheduling changes allowed under the ISBL Agreement for Force Majeure events, Change Orders and TXIT's late payment of invoices.

38. TXIT breached the ISBL Agreement by attempting to unilaterally revoke its approval of Polaris' Notice of Mechanical Completion.

39. TXIT's breaches caused Polaris damages.

## CONDITIONS PRECEDENT

40. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

41.     All conditions precedent have been met.[5]

## ATTORNEY'S FEES AND COSTS

42.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

43.     Polaris seeks to recover attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009.

44.     Polaris seeks recovery of attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

## JURY DEMAND AND JURY FEE

45.     Pursuant to TEX. R. CIV. P. 216, Polaris demands a jury trial on all triable issues, and has deposited with the Clerk of Court the required jury fee.

## RULE 193.7 NOTICE

46.     Pursuant to TEX. R. CIV. P. 193.7, Polaris hereby gives actual notice to TXIT that any documents produced will be used against the producing party at any pre-trial proceeding or at trial.

## REQUESTS FOR DISCLOSURE

47.     Polaris hereby requests that TXIT provide its disclosures pursuant to Rule 194 of the Texas Rules of Civil Procedure.

---

[5] Polaris attempted to engage TXIT in the dispute resolution procedures set forth in the Parties' ISBL Agreement on more than one occasion. TXIT has expressly denied the application of those procedures. Consequently, completion of those requirements has been rendered futile by TXIT, and accordingly conditions precedent have been met.

11

**PRAYER FOR RELIEF**

For the foregoing reasons, Polaris respectfully requests that the Court enter judgment against TXIT for damages, pre- and post-judgment interest, attorney's fees, costs of court, and declare the rights of the parties under the ISBL and OSBL Agreements together with any other relief to which Polaris has shown itself to be entitled.

Date: September 25, 2020

Respectfully submitted,
**WOMBLE BOND DICKINSON (US), LLP**

*/s/ Liz Klingensmith*
Tony Guerino
Texas State Bar No. 00792552
Elizabeth E. Klingensmith
Texas State Bar No. 24046496
811 Main St., Suite 3130
Houston, Texas 77002
Telephone: 346-998-7858
Facsimile: 346-998-5901
Tony.guerino@wbd-us.com
Liz.klingensmith@wbd-us.com

**ATTORNESY FOR PLAINTIFF POLARIS ENGINEERING, INC.**

12