UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| POLARIS ENGINEERING, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-3389 |
| | § | |
| TEXAS INTERNATIONAL TERMINALS, LTD., | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Texas International Terminals, Ltd.'s ("TXIT") application for preliminary injunction (Dkt. 43),[1] which is supported by a separately filed affidavit (Dkt. 52). Plaintiff Polaris Engineering, Inc. ("Polaris") responded (Dkt. 55), and TXIT replied (Dkt. 58). Because TXIT did not file the affidavit (Dkt. 52) supporting its preliminary injunction application until the day that Polaris's response was due, the court allowed Polaris additional time to supplement its response, which Polaris did (Dkts. 61–62). *See* Dkt. 59. After reviewing the application, response, reply, supplemental response, and applicable law, the court is of the opinion that TXIT's application should be DENIED.

I. BACKGROUND

This suit revolves around TXIT's fuel storage, loading and processing facility in Galveston, Texas. Dkt. 44 ¶ 1; Dkt. 57 ¶ 1. Polaris agreed to engineer, design, and construct a terminal and crude processing facility for TXIT at that location. Dkt. 56 at 3. There are four separate contracts

---

[1] The application was included in TXIT's second amended answer (Dkt. 42), which was duplicated (Dkt. 43) to give the application its own dedicated entry on the docket.

that govern the project: the ISBL, OSBL, OSBL Engineering, and Dock Agreement.  Dkt. 44 ¶ 1;
Dkt. 57 ¶ 1.  The only contract that is relevant to the instant application is the Dock Agreement.[2]

At some point, the deal fell apart and the parties' relationship deteriorated.  While the
details are important with respect to the substantive claims in the suit, they are irrelevant to the
preliminary injunction sought.  What is relevant is that Polaris now possesses several pieces of
equipment that TXIT claims ownership of: a crane control module, an electrical rack, and
gangways ("Equipment at Issue").  *See* Dkt. 43 ¶ 32.

Three parts of the Dock Agreement deserve the court's attention as it determines whether
an injunction is appropriate.  First, section 14.2 provides that: "Equitable title to Drawings,
Specifications and like materials, Work and Equipment provided by Contractor or Subcontractors
hereunder will pass to Owner as and to the extent payment therefor is made by Owner in
accordance with this Agreement."  Dkt. 51-2 at 44.  The parties do not dispute that "Equipment"
is a defined term that specifically includes the Equipment at Issue.

Second, section 7.1 explains that, in consideration of Polaris's performance of the "Work,"
TXIT shall pay Polaris a "fixed, lump sum price."  *Id.* at 30.  In accordance with section 8.1,
however, the lump sum is split among "nine (9) Progress Payments as detailed in <u>Appendix B</u>."
*Id.* at 30.

Finally, in Appendix B is the Progress Payment Schedule.  *Id.* at 69.  For each payment,
the schedule includes a due date, an amount due, and "Operational Milestone Indications"
associated with the payment.  *Id.* at 69.  The parties contest the meaning of one of the operational
milestone indications listed for payment number 5: "Equipment Payments 100%."  *Id.* at 69.

---

[2] The Dock Agreement is officially titled "Engineering, Procurement and Construction Agreement of the Green
Marine Fuel Dock Facilities."  Dkt. 51-2.

TXIT claims that it has fully paid Polaris through payment number 5 and that it is therefore entitled to ownership of the Equipment at Issue, rendering Polaris liable for conversion for taking exclusive possession.  *See* Dkt. 43 ¶¶ 63–66.  TXIT argues that it is entitled to a preliminary injunction "requiring Polaris to immediately return the [Equipment at Issue]."  *Id.* ¶ 73.

## II. LEGAL STANDARD

A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure has the burden to show four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any harm the injunction might cause the nonmovant; and (4) that the injunction will not disserve the public interest.  *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 252–53 (5th Cir. 2009); *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citation omitted).  Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue.  *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).  Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion."  *Bluefield Water Ass'n*, 577 F.3d at 253.

## III. ANALYSIS

TXIT's filings do not establish that it is entitled to injunctive relief because it has not persuaded the court that it has a substantial likelihood of success on the merits of its conversion claim.  To succeed on its claim of conversion under Texas law, TXIT must prove that: "(1) [it] owned or had legal possession of the property or entitlement to possession; (2) [Polaris] unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, [TXIT's] rights as owner[]; (3) [TXIT] demanded return of the

property; and (4) [Polaris] refused to return the property." *J.P. Morgan Chase Bank, N.A. v. Tex. Cont. Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.) (citing *Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.)).

The key issue is ownership of the Equipment at Issue. It is undisputed that TXIT has demanded that Polaris return the Equipment at Issue, and that Polaris has refused. Moreover, the second element—the unlawful or unauthorized exercise of control—is dependent on the first because if Polaris is the lawful or equitable owner, then its exercise of dominion and control over the Equipment at Issue would not be inconsistent with the rights of the owner. With respect to ownership, the Dock Agreement states that "[e]quitable title to . . . Equipment provided by [Polaris] . . . will pass to [TXIT] as and to the extent payment therefor is made by [TXIT] in accordance with this agreement." Dkt. 51-2 at 44.

TXIT argues that it is the rightful owner of the Equipment at Issue because it has, with what it claims to be a justified exception for subcontractor liens and fund trapping notices, fully paid progress payments numbers 1–5. Dkt. 58 at 2. Because "Equipment Payments 100%" is listed as an operational milestone under progress payment number 5, TXIT asserts that it has now fully paid for the Equipment at Issue. *Id.* at 3. Thus, TXIT reasons that equitable title to the Equipment at Issue has passed from Polaris to TXIT under section 14.2 of the Dock Agreement. *Id.*

Polaris disputes TXIT's interpretation of the operational milestone language associated with progress payment number 5—"Equipment Payments 100%." It argues that the operational milestones attached to each payment are goals for Polaris to achieve, not an itemized list of what TXIT has paid for. Dkt. 61 at 3 & n.4. In support of this view, Polaris asserts that the Dock Agreement is a fixed-price construction contract, which it claims is standard in the industry. Dkt.

56 at 4–5, 11–12.  Notably, TXIT does not dispute that the Dock Agreement is a fixed-price contract,[3] and there is support for this premise in section 7.1 of the Dock Agreement.  Dkt. 51-2 at 30.  Under a fixed-price contract, nothing is paid for fully until the entire price is paid, at which point 100% of the project is paid for.  Under Polaris's interpretation, then, equitable title to the Equipment at Issue would not pass under section 14.2 until the entire price has been paid.

Both parties have put forward plausible readings of the contract, but at this stage the court finds that Polaris's interpretation is more persuasive.  The court does so, however, without formally deciding the issue.  What is important to the preliminary injunction analysis is not whether Polaris has shown unequivocally that it will ultimately prevail on the conversion claim, but whether TXIT has persuaded the court that it has a substantial likelihood of success on the merits of that claim.  The court is not persuaded that TXIT has met this high burden.  For that reason, TXIT's application for a preliminary injunction is DENIED.

## IV. CONCLUSION

TXIT's application for preliminary injunctive relief (Dkt. 43) is DENIED. Signed at Houston, Texas on March 8, 2021.

Gray H. Miller
Senior United States District Judge

---

[3] TXIT does, nonetheless, draw different conclusions about the effect of section 14.2.